

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00325-CR

ALFONSO ARAGON, JR.                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 43RD JUDICIAL DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In a single point, Alfonso Aragon, Jr., appeals his conviction for possession of between four and two hundred grams of methamphetamine with the intent to deliver, asserting that the trial court abused its discretion by overruling in part his objection to the State's questioning of a police officer regarding the amount of methamphetamine that a user typically uses to get "high."  We will affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Texas Department of Public Safety Trooper Burt Blue was dispatched to conduct a welfare check on a stranded motorist and found a vehicle on the side of the road. Trooper Blue approached the vehicle and made contact with Aragon and the female driver. Aragon and the driver acted nervously and would not look at Trooper Blue when they spoke to him. The driver of the vehicle gave Trooper Blue consent to search the vehicle. Trooper Blue asked if there was anything illegal in the vehicle, and Aragon admitted that he had "a couple ounces of ice" with him under the passenger seat. Trooper Blue found what was later determined to be 165.73 grams of methamphetamine under the passenger seat. Aragon told Trooper Blue that the methamphetamine had been loaned to him and that he planned to sell the drugs to get money for his children.

Aragon entered an open plea of guilty and elected to have the trial court assess punishment. At the punishment trial, the State called Sergeant James Peel of the Weatherford Police Department, Narcotics Division Special Crimes Unit to testify. He discussed his extensive background, experience, and training in the narcotics field. The following exchange then occurred:

> [STATE]: Okay. Given your experience around this—this point in time—well, let me preface that. When a meth user is going to get high, how much meth does a typical meth user use to get high?
>
> [DEFENSE COUNSEL]: Excuse me, Judge. I believe this is outside the range of his skills or—and he certainly hasn't been qualified as an expert. And everything he says is going to be based on hearsay. So we're objecting to the fact that his testimony is

2

relying upon not only hearsay, but hearsay upon hearsay that is not qualified as an expert.  And on those bases, along with allowing him to testify as to hearsay on hearsay, would violate the right of confrontation and cross-examination since there's no way we could cross-examine—

THE COURT:  [Defense counsel], your objection is sustained in part, with this limiting instruction:  I will permit the officer to testify to what is in his knowledge, based on his experience, and some— should he testify what is a common aggregate amount to be sold or traded to be used as a usable quantity.  But how little amount he can use seems to be beyond his exact expertise.  But for the trade of methamphetamine and drugs, then please, with that limiting instruction, please rephrase your question.

. . .

[STATE]:  Now, in regard to what a typical amount is for a drug—a methamphetamine user to use to get high, does that—is there a range?

[DEFENSE COUNSEL]:  Judge, we're going to have the same objections that we've had before.  Nothing's changed.  They've just—

THE COURT:  Your objection is sustained.  That's a proper question for a doctor, not for a police officer.  He can testify what is the traded amount, what is an arrestable amount, what's the purported amount people use, but not as to the medical effect by a little amount for different bodies.  That's a different—

[STATE]:  Judge, I'm not asking that.  I asked how much they typically use to get high.

THE COURT:  Well, I think there's a different way to ask that same question, which the courts have given you discretion to ask.  Go ahead.

[STATE]:  Okay.  I'll rephrase it, Judge.

[STATE]:  Let me ask it this way:  Have you had a chance to gather the information with regard to how much a narcotics

3

offender—a methamphetamine offender will typically use in a single-use amount?

    [SERGEANT PEEL]:  Yes.

    [STATE]:  And how much is that?

    [SERGEANT PEEL]:  Quarter of a gram to half a gram.

    [STATE]:  Okay.  And does that depend upon how often they're using?

    [SERGEANT PEEL]:  Yes.

Sergeant Peel then testified about the different quantities of methamphetamine and the typical price of those varying quantities.

### III. NO PRESERVATION OF ERROR

In his sole point, Aragon asserts that the trial court abused its discretion by overruling in part his objection to Sergeant Peel's non-expert opinion testimony as set out above.  The State asserts that Aragon failed to preserve error because the trial court sustained his objections, he did not pursue an adverse ruling, and he did not object each time similar questions and testimony were presented.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P.

4

33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A party must continue to object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

In this case, the trial court sustained both of Aragon's objections to the State's questioning Sergeant Peel about "how much meth does a typical meth user use to get high" and about "the range" of methamphetamine that a methamphetamine user uses "to get high." Aragon received the relief he requested and did not make any other requests to the court or obtain an adverse ruling.[2] *See Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) ("It is

---

[2]Although the trial court stated that it was sustaining Aragon's objection only "in part," the trial court's ruling—prohibiting the State from asking what amount of methamphetamine a user typically uses to get high—and its "limiting instruction" show that the trial court gave Aragon all of the relief he was requesting—that the State not elicit testimony from Sergeant Peel about the

5

well settled that when [a defendant] has been given all the relief he requested at trial, there is nothing to complain of on appeal."); *Ashire v. State*, 296 S.W.3d 331, 343 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *White v. State*, 934 S.W.2d 891, 895 (Tex. App.—Fort Worth 1996, no pet.); *see also Davis v. State*, 894 S.W.2d 471, 474 (Tex. App.—Fort Worth 1995, no pet.) (holding complaint not preserved when trial court sustained objection and gave an instruction to disregard and when no other relief was requested).  When the State rephrased its question the third time, asking Sergeant Peel how much methamphetamine "a methamphetamine offender will typically use in a single-use amount," Aragon did not object any error is not preserved for our review.  *See* Tex. R. App. P. 33.1(a)(1); *Geuder*, 115 S.W.3d at 13.  Consequently, because Aragon's complaint has not been preserved for our review, we cannot address it and we overrule his sole point.

## IV. CONCLUSION

Having overruled Aragon's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL:  WALKER, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 16, 2012

---

quantity of methamphetamine a user typically uses to get high.  *See Davis v. State*, 955 S.W.2d 340, 353 n.3 (Tex. App.—Fort Worth 1997, pet. ref'd).

2