COURT OF 
APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 2-03-057-CR
 
   
BAQUEE 
A. SABUR                                                                APPELLANT
  
V.
   
THE 
STATE OF TEXAS                                                                  STATE
   
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
pro se Baquee A. Sabur appeals from his conviction for theft of property and 
credit card abuse. In his sole point, he contends that his United States and 
Texas constitutional rights and state statutory rights to a speedy trial were 
violated. We affirm.
        Appellant 
was arrested in January 2002. He was indicted for theft of person, theft of 
property, and credit card abuse on March 21, 2002. His trial began on November 
20, 2002.
        Appellant 
claims that the Texas Constitution provides greater speedy trial rights than the 
United States Constitution and that his conviction should be dismissed pursuant 
to the Texas Speedy Trial Act. U.S. Const. 
amend. VI; Tex. Const. art. I, § 
10; Tex. Code Crim. Proc. Ann. 
art. 32A.02 (Vernon 1989). We will not address his argument under the Texas 
Speedy Trial Act because the Texas Court of Criminal Appeals has declared the 
act unconstitutional. See Meshell v. State, 739 S.W.2d 246, 257-58 (Tex. 
Crim. App. 1987). Furthermore, although the Texas constitutional speedy trial 
right exists independently of the federal guarantee, Texas courts traditionally 
analyze claims of a denial of the state speedy trial right under the factors 
established in Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 
(1972). As a result, the analysis for determining whether appellant’s rights 
were violated under the Texas Constitution is the same for determining whether 
his rights were violated under the United States Constitution. Thus, we will 
address appellant’s complaints under the Barker factors.
        The 
Sixth Amendment to the United States Constitution guarantees the accused's right 
to a speedy trial. U.S. Const. amend. 
VI. In addition, article I, section 10 of the Texas Constitution guarantees the 
accused in all criminal prosecutions the right to a speedy and public trial. Tex. Const. art. I, § 10. The Supreme 
Court has stated that, “On its face, the Speedy Trial Clause is written with 
such breadth that, taken literally, it would forbid the government to delay the 
trial of an ‘accused’ for any reason at all.” Doggett v. United States, 
505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992). The Court “qualified the 
literal sweep of the provision” by analyzing the constitutional question in 
terms of four specific factors: (1) whether delay before trial was uncommonly 
long; (2) whether the government or the criminal defendant is more to blame for 
that delay; (3) whether, in due course, the defendant asserted his right to a 
speedy trial; and (4) whether he suffered prejudice as the delay's result. Zamorano 
v. State, 84 S.W.3d 643, 647-48 (Tex. Crim. App. 2002) (quoting Doggett, 
505 U.S. at 651, 112 S. Ct. at 2690).
        Under 
Barker v. Wingo, courts must analyze federal constitutional speedy trial 
claims by first weighing the strength of each of the above factors and then 
balancing their relative weights in light of “the conduct of both the 
prosecution and the defendant.” 407 U.S. at 530, 92 S. Ct. at 2191-92. None of 
the four factors is “either a necessary or sufficient condition to the finding 
of a deprivation of the right of speedy trial.” Id. at 533, 92 S. Ct. 
at 2193. Instead, they are related factors, which must be considered together 
along with any other relevant circumstances. Id. No one factor possesses 
“talismanic qualities,” thus courts must “engage in a difficult and 
sensitive balancing process” in each individual case. Id.
        In 
reviewing the trial court's ruling on appellant’s speedy trial claim, we apply 
a bifurcated standard of review: an abuse of discretion standard for the factual 
components, and a de novo standard for the legal components. Zamorano, 84 
S.W.3d at 648. Because appellant lost in the trial court on his speedy trial 
claim, we must presume the trial court resolved any disputed fact issues in the 
State's favor, and we must also defer to the implied findings of fact that the 
record supports. Id. Because the relevant facts are undisputed, the 
primary issue in this case involves the legal significance of these facts to 
appellant's claim. Id.
The Length of the Delay
        The 
first Barker factor, the length of the delay, is measured from the time 
the defendant is arrested or formally accused. United States v. Marion, 
404 U.S. 307, 313, 92 S. Ct. 455, 459 (1971). The length of the delay is, to 
some extent, a triggering mechanism, so that a speedy trial claim will not even 
be heard until passage of a period of time that is, on its face, unreasonable in 
the circumstances. Doggett, 505 U.S. at 651-52, 112 S. Ct. at 2690; Barker, 
407 U.S. at 530, 92 S. Ct. at 2192. “If the accused makes this showing, the 
court must then consider, as one factor among several, the extent to which the 
delay stretches beyond the bare minimum needed to trigger judicial examination 
of the claim.” Doggett, 505 U.S. at 652, 112 S. Ct. at 2691.
        In 
general, courts deem delay approaching one year to be “unreasonable enough to 
trigger the Barker enquiry.” Id. at 652 n.1, 112 S. Ct. at 2691 
n.1. Although appellant waited less than a year–ten months–for trial, the 
United States Supreme Court has explained that courts should be less tolerant of 
long delays for “ordinary street crime.” Barker, 407 U.S. at 531, 92 
S. Ct. 2192. Therefore, although a ten-month delay may not in itself be 
unreasonable, the fact that the close-to-one-year delay occurred in a case 
involving what might be considered “ordinary street crime” leads us to 
conduct in an abundance of caution a full analysis under the other Barker 
factors.
The Reason for the Delay
        The 
State has the burden of justifying the delay. Emery v. State, 881 S.W.2d 
702, 708 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 1192 (1995). When 
a court assesses the reason the State assigns to justify the delay, “different 
weights should be assigned to different reasons.” Barker, 407 U.S. at 
531, 92 S. Ct. at 2192. Moreover, some reasons are valid and “serve to justify 
appropriate delay.” Id.
        At 
the hearing on appellant’s motion, the State requested the trial court to take 
judicial notice that appellant had four cases pending against him, “with 
various offense dates, the first being in September of 2001 and the most recent 
being January of 2002.” The trial court also took judicial notice of the fact 
that the State announced ready for trial in March 2002, eight months before 
trial began. The State never argued or sought to prove, however, that the other 
charges caused or contributed to the delay. See Dragoo v. State, 
96 S.W.3d 308, 314 n.4 (Tex. Crim. App. 2003) (“The State might have argued, 
and sought to prove, that eight months of the delay was justified by its 
prosecution of appellant under the murder indictment. In the absence of argument 
and proof, however, we will not presume that the prosecution of appellant for 
murder caused any of the delay in the prosecution of him for unlawful possession 
of a firearm.” (citation omitted)); see also Easley v. State, 564 
S.W.2d 742, 745 (Tex. Crim. App.) (stating delay caused by trying the defendant 
on other charges is justified), cert. denied, 439 U.S. 967 (1978). Nor 
did the State explain the reason for the eight-month delay from the announcement 
of ready to the trial. The state made no arguments to justify the delay in 
getting to trial. Thus, in the absence of an assigned reason for the delay, a 
court may presume neither a deliberate attempt on the part of the State to 
prejudice the defense nor a valid reason for the delay. Dragoo, 96 S.W.3d 
at 314.
The Defendant's Assertion of His Right
        Although 
a defendant’s failure to assert his speedy trial right does not amount to a 
waiver of that right, “failure to assert the right . . . make[s] it difficult 
for a defendant to prove that he was denied a speedy trial.” Barker, 
407 U.S. at 532, 92 S. Ct. at 2193. This is so because a defendant’s lack of a 
timely demand for a speedy trial “indicates strongly that he did not really 
want a speedy trial,” Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. 
App.), cert. denied, 506 U.S. 942 (1992), and that he was not prejudiced 
by lack of one. Furthermore, the longer the delay becomes, “the more likely a 
defendant who wished a speedy trial would be to take some action to obtain it. 
Thus inaction weighs more heavily against a violation the longer the delay 
becomes.” Dragoo, 96 S.W.3d at 314.
        Appellant 
filed his pro se motion for speedy trial on April 12, 2002, only three months 
after his arrest and only a few weeks after he was indicted.[2]  
Six months later, appellant filed a petition for writ of habeas corpus in the 
trial court on speedy trial grounds.[3]  The 
record does not reflect that appellant ever requested a hearing on either the 
motion or the petition. Furthermore, the trial court did not hear argument 
regarding the speedy trial complaints until a pretrial hearing held on November 
20, 2002, the day of trial. Although it is not clear whether the trial court 
specifically heard the motion for speedy trial, he heard testimony from 
appellant regarding why appellant requested dismissal of the charges for the 
alleged violations of his constitutional rights to a speedy trial. The trial 
court denied appellant relief.
        Although 
appellant took an initial interest in his claim that his speedy trial rights 
were violated, he never requested a hearing on the issue until the day of trial. 
See Shaw v. State, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). In 
addition to never requesting a hearing, appellant contended at the pretrial 
hearing that the charges against him should be dismissed because of the 
delay.[4]  See Phillips v. State, 650 
S.W.2d 396, 401 (Tex. Crim. App. 1983) (stating defendant's motivation in asking 
for dismissal rather than a prompt trial is clearly relevant, and may sometimes 
attenuate the strength of his claim). Thus, while appellant timely, if not 
prematurely raised his rights to a speedy trial, his later inaction and request 
for dismissal before trial indicate that he may have been more interested in 
avoiding trial than in having a speedy one. See id.; Orosco v. State, 827 
S.W.2d 575, 577 (Tex. App.—Fort Worth, pet. ref’d), cert. denied, 506 
U.S. 960 (1992). We weigh this factor against appellant.
Prejudice to the Defendant Resulting from the Delay
        In 
assessing the final Barker factor, we must do so in light of the 
interests of appellant that the speedy trial right was designed to protect: (1) 
to prevent oppressive pretrial incarceration; (2) to minimize the accused’s 
anxiety and concern; and (3) to limit the possibility that the accused’s 
defense will be impaired. Barker, 407 U.S. at 532, 92 S. Ct. at 2193. Of 
these forms of prejudice, “the most serious is the last, because the inability 
of a defendant adequately to prepare his case skews the fairness of the entire 
system.” Id. Furthermore, with respect to the third interest, 
affirmative proof of particularized prejudice is not essential to every speedy 
trial claim, because “excessive delay presumptively compromises the 
reliability of a trial in ways that neither party can prove or, for that matter, 
identify.” Doggett, 505 U.S. at 655, 112 S. Ct. at 2693. On the other 
hand, this “presumption of prejudice” is “extenuated . . . by the 
defendant’s acquiescence” in the delay. Id. at 658, 112 S. Ct. at 
2694.
        Appellant 
contends that he was prejudiced because the minimum sentence he could have 
received was less than the length of time he was in jail; his incarceration was 
difficult for him and his family and affected his mental health; and it 
prejudiced his defense in that he could not obtain testimony from a codefendant. 
The fact that the potential minimum sentence is less than the length of his 
incarceration does not presuppose prejudice. Cf. State v. Muñoz, 991 
S.W.2d 818, 828 n.9 (Tex. Crim. App. 1999) (“A jury’s sentence is irrelevant 
to a speedy trial analysis.”). Appellant could have been assessed the minimum 
sentence and that fact would have been irrelevant.[5]  
See id. Appellant’s cursory testimony at the pretrial hearing that he 
and his family suffered hardship as a result of his incarceration does not show 
that he suffered any greater hardship than what other criminal defendants 
awaiting trial suffer. Further, his claims that the incarceration affected his 
mental health are unsubstantiated. We will defer to the trial court’s finding 
that he did not suffer extraordinary anxiety. See id. Finally, there is 
no evidence in the record that appellant was not able to call a codefendant to 
testify as a result of the delay. Appellant never raised the issue at trial, nor 
does he identify the codefendant. Accordingly, the circumstances of the pretrial 
incarceration do not demonstrate that appellant was prejudiced by the delay.
        Although 
the ten-month delay for the offenses in this case might be considered 
unreasonable, the delay is not so long as to be considered a per se deprivation 
of appellant’s constitutional rights. See Orosco, 827 S.W.2d at 
576 (“A delay of two years and seven months is not, per se, a deprivation of 
the appellant's right to a speedy trial, but is a fact requiring further 
consideration of the appellant's claim.”). Furthermore, when balancing the 
delay in this case with appellant’s failure to request a timely hearing on his 
motion and the lack of prejudice to him, we conclude that appellant’s rights 
to a speedy trial were not violated. Accordingly, the trial court did not abuse 
his discretion in not granting appellant’s motion, and we overrule 
appellant’s sole point.
        We 
affirm the trial court’s judgment.
   
                                                                  BOB 
McCOY
                                                                  JUSTICE
   
PANEL 
F:   CAYCE, C.J.; and LIVINGSTON and McCOY, JJ.

DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
January 22, 2004
 

 
NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
A notation of the front of the motion initialed by the presiding judge implies 
that he was also concerned of the delay in this case: “Send to Pro See Atty. 
We need to dispose of this case.”
3. 
Although appellant filed in the trial court on October 14, 2002, a petition for 
writ of mandamus, a pretrial application for writ of habeas corpus is not a 
proper vehicle for raising a speedy trial claim. Smith v. Gohmert, 962 
S.W.2d 590, 593 (Tex. Crim. App. 1998).
4. 
In his motion for speedy trial, however, appellant requested a speedy trial. He 
later requested only dismissal in his petition for writ of mandamus.
5. 
As it is, appellant was sentenced to six months and eighteen months, the 
sentences to run concurrently.